J-S48030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF K.M.R. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.T.R., JR. | No. 287 WDA 2016 |

Appeal from the Order Entered January 19, 2016,
in the Court of Common Pleas of Fayette County,
Orphans' Court at No(s): 18 Adopt-2015.

BEFORE: BOWES, DUBOW, and MUSMANNO, JJ.

MEMORANDUM BY DUBOW, J.:            **FILED AUGUST 02, 2016**

Appellant, M.T.R, Jr. ("Father") appeals from the order involuntarily terminating his parental rights to three-year-old K.M.R. ("Child") pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a) and (b). We affirm.

### SUMMARY OF FACTS AND PROCEDURAL HISTORY

Child was born to Father and K.D.W. ("Mother") in May 2013. The parties were never married. Except for a short period following Child's birth, Mother and Father have never cohabitated. Mother and Child live with Mother's father, T.D.W. ("Maternal Grandfather"), his wife, and Mother's two younger sisters.

Mother testified that her relationship with Father was unstable. Mother stated that she initially permitted Father to visit Child at her family's home and tried to involve Father in Child's life, but her position changed

after two incidents in which Father forcefully tried to remove Child from her care. Following Christmas in 2013, Father's contact with Child became increasingly sporadic and infrequent. According to Mother's testimony, she attempted to accommodate Father's requests to visit with Child, but he would frequently appear at Mother's home after Child had fallen asleep.

Father's last visit with Child occurred during Child's first birthday party in May 2014. Shortly thereafter, Father voluntarily committed himself to drug rehabilitation in Florida in order to treat his heroin addiction, and subsequently returned for treatment in December 2014 and January 2015.

Father admitted during testimony that the rehabilitation facilities allowed him limited telephone access and permitted him to write letters, but he did not attempt to contact Child during those times. He also failed to contact Mother even though she resided at the same address and Father possessed phone numbers for Mother and her family. Aside from sporadic Facebook messages, and one attempt to have his own father ("Paternal Grandfather") deliver money to Child via a Christmas card in 2014, Father has not attempted to maintain contact with Child.

On May 7, 2015, approximately twelve months after Father's last contact with Child, Mother filed a Petition for the Involuntary Termination of Parental Rights ("TPR Petition") as to Father pursuant to 23 Pa.C.S. § 2511(a)(1).

On September 23, 2015, the Orphans' Court held an evidentiary hearing regarding the TPR Petition ("TPR hearing"). Mother testified, and

presented the testimony of Maternal Grandfather, who informed the Orphans' Court of his desire to adopt Child. Father testified on his own behalf and presented the testimony of Paternal Grandfather.

By decree entered January 19, 2016, the Orphans' Court granted the TPR Petition based upon Sections 2511(a)(1) and 2511(b). This timely appeal by Father follows.

## ISSUES ON APPEAL

Father raises the following issues on appeal:

1. Did the [Orphans'] Court err in terminating [Father's] parental rights when [Mother] failed to prove by clear and convincing evidence that her grounds for seeking the termination of parental rights were valid.

2. Did the [Orphans'] Court err in terminating [Father's] parental rights when the proposed adoptive parent is [Child's Maternal Grandfather].

Father's Brief at 1 (issues are reordered for ease of disposition).

## LEGAL ANALYSIS

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* We may reverse a decision based on "an abuse of discretion only upon demonstration of manifest unreasonableness,

partiality, prejudice, bias, or ill-will." ***Id.*** We may not reverse, however, merely because the record would support a different result. ***Id.*** at 826-27.

We give great deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). The Orphans' Court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. ***In re M.G.***, 855 A.2d 68, 73-74 (Pa. Super. 2004).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***Id.*** (citation and quotations omitted).

**Termination Pursuant to 2511(a)(1)**

Father first argues that the trial court erred in terminating Father's parental rights when Mother failed to prove by clear and convincing evidence that there were proper grounds to terminate under Section 2511(a)(1). Father's Brief at 1. We disagree.

Section 2511(a)(1) provides that the trial court may terminate parental rights if the petitioner establishes that for six months, the parent demonstrated a settled intent to relinquish a parental claim or a refusal or failure to perform parental duties:

    a)    The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

        (1)    The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. 2511(a)(1). This Court has interpreted this provision as requiring the petitioner to demonstrate a settled intent to relinquish a parental claim to a child or a refusal or failure to parent:

> To satisfy the requirements of section 2511(a)(1), the moving party must produce **clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.**

***In re Z.S.W.***, 946 A.2d 726, 730 (Pa. Super. 2008) (emphasis added).

This Court has defined "parental duties" in general as the obligation to affirmatively and consistently provide safety, security and stability for the child:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has

held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life'.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citation omitted).

Moreover, a parent must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent child relationship:

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.

*Id.* (internal citations omitted).

Most importantly, "parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [his] physical and emotional needs." *Id.*

The Orphan's Court found that Father failed to maintain contact with Child and failed to perform parental duties during the relevant period prior to Mother's filing of the TPR Petition:

Father admits that, during his time in residential treatment, he, at the very least, had some access to a phone; however, he did not attempt to contact [Child] while he was attending these

programs. Mother testified that she has lived at the same address her entire life, and [Child] has lived at the same address for the entirety of his; however, Father made no attempt to send [Child] a letter, gifts, necessities, or so much as a greeting card, in the six months preceding the filing of the [TPR] Petition. At the very least, Father had an opportunity to pass along a birthday message for [Child] through [Mother] on Facebook, his chosen medium; he declined to do so.

Orphans' Court's Opinion, 1/19/16, at 9.

Further, the trial court found that "Father's attendance in various drug rehabilitation facilities, while frequent, was not continuous throughout the six months prior to the filing of Mother's Petition." *Id.* at 7. Father's most recent rehabilitation began on January 8, 2015, the facility transferred him to a halfway house on February 18, 2015, and Mother did not file a TPR Petition until May 7, 2015. *Id.* at 8. "Father offers no explanation as to why he was unable to contact [Child] in the time immediately following his discharge from the residential portion of his rehabilitation, either by telephone, mail, or otherwise." *Id.* at 8.

Father argues that the record reflects otherwise. Specifically, that Father instructed Paternal Grandfather to take money as a Christmas gift to Child during Christmas 2014 and Mother refused the gift, that Mother blocked Father from Facebook communication, and that Father did not have a phone number for Mother and her family. Father's Brief at 6.

Our review of the record belies Father's claims. We find that these arguments focus on the credibility of the witnesses and we accept the Orphans' Court's determination that Mother's testimony was credible. *In re*

- 7 -

***M.G.***, ***supra***, at 73-74. Additionally, we note that one attempt to contribute financially to Child at Christmas does not disturb the Orphan's Court's conclusion that Father failed to utilize all available resources to maintain a relationship with Child. ***See In re B., N.M.***, ***supra***, at 855.

The record reflects the Orphans' Court's findings. Therefore, we find that the Orphans' Court did not abuse its discretion in terminating Father's parental rights pursuant to 23 Pa.C.S. §2511(a)(1).

**Maternal Grandfather as Adoptive Resource**

Father's second argument is that the Trial Court erred in terminating Father's rights when the proposed adoptive parent is Child's biological grandfather. Father's Brief at 1. We disagree.

In the instant case, Mother, as petitioner, was required to "include at averment that an adoption is presently contemplated or that a person with a present intention to adopt exists." ***In re Adoption of M.R.D.***, 128 A.3d 1249, 1260 (Pa. Super. 2015) (*en banc*), ***appeal granted***, 133 A.3d 293 (Pa. 2016) (citation and quotations omitted); 23 Pa.C.S. §2512(b).

This Court has determined "[a] termination petition of one biological parent against the other, per Section 2512(a)(1), is cognizable only if the averred adoption is foreseeable." ***M.R.D., supra***, at 1260. Stated differently, "[a]lthough a petition might satisfy the statutory requirements for termination of parental rights, a court still cannot grant the petition

without a corresponding plan for adoption of the child." ***M.R.D., supra***, at 1260.

Father asserts that the Orphans' Court erred in terminating his parental rights because the proposed adoption by Maternal Grandfather would not create the requisite "new parent-child relationship" contemplated by the Adoption Act. Father's Brief at 6. Father's argument is completely without merit because it relies solely on a decision that this Court withdrew after granting *en banc* reargument in ***M.R.D***. ***See M.R.D., supra***.

In fact, after reargument, the *en banc* panel held that a grandfather **can** be an appropriate adoptive resource under the Adoption Act and serve the "primary purpose of the Adoption Act" where grandfather and child "already enjoy a healthy, deep, emotional bond" and grandfather "serves as a *de facto* father to [child]," such as in this case. ***M.R.D., supra,*** at 1265-66.

The record reflects that Child has lived with Maternal Grandfather his entire life, that Maternal Grandfather has provided assistance and availability as a father figure, including food, shelter, financial and emotional support. Orphans' Ct. Op. at 12.

Accordingly, we find that Maternal Grandfather is an appropriate adoptive resource and that the trial court did not abuse its discretion.

**Termination Pursuant to Section 2511(b)**

Lastly, we agree with the Orphans' Court's determination that Mother met her burden under 23 Pa.C.S. §2511(b) and that terminating Father's parental rights is in the best interest of the Child.[1]

With respect to Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to the effect that terminating the parental bond will have on the child. Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re: Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In *In re C.M.S.*, this Court found that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.,* 884 A.2d 1284, 1287 (Pa. Super. 2005). In addition, the Orphans' Court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.*

In cases where there is no evidence of a bond between a parent and a child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d

_____

[1] While Father does not specifically challenge whether Mother has met her burden under § 2511(b), we choose to discuss the Orphans' Court's findings under this section as it is integral to a termination of parental rights.

753, 762-63 (Pa. Super. 2008). Thus, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

In the instant case, the Orphans' Court concluded that testimony from the TPR hearing established that Child is doing well in the care of Mother and Maternal Grandfather, and that Child has "love, comfort, security, and stability." Orphans' Ct. Op. at 9. Further, the Orphans' Court found that there was no evidence of a bond between Father and Child, and that terminating Father's parental rights would not have a detrimental effect on Child. *Id.* at 10.

Our review of the record supports the Orphan's Court's conclusions that a termination of parental rights is in the best interest of Child and we find no abuse of discretion.

## CONCLUSION

In sum, we find that the Orphans' Court properly granted the TPR Petition. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/2/2016

- 11 -